CITY OF GREENSBORO v. GUILFORD COUNTY, BOARD OF COMMIS-
    SIONERS OF GUILFORD COUNTY, AND BOARD OF EDUCATION OF
    GUILFORD COUNTY,

and

GREATER GREENSBORO SCHOOL DISTRICT ET AL. v. GUILFORD
    COUNTY, BOARD OF COMMISSIONERS OF GUILFORD COUNTY, AND
    BOARD OF EDUCATION OF GUILFORD COUNTY.

(Filed 18 March, 1936.)

1. **Counties E b: Schools and School Districts B b—County may not be
    forced to assume liability for special charter school district bonds not
    necessary to maintenance of constitutional school term.**

    Where a special charter school district and a city operating schools
    within a special charter school district coterminous with its corporate

limits, issue bonds, respectively, for school sites, buildings, and maintenance of schools in order to provide better schools within the districts than those provided by the General Assembly for the county generally, in accordance with intent of the General Assembly in creating such special charter districts, but at the time such bonds are issued they are not reasonably essential and necessary for the operation of schools in the districts for the minimum constitutional term of six months, Art. IX, sec. 2, the city and special charter school district are not entitled to *mandamus* to force the county to assume such bonds upon the taking over by the county of the buildings as a part of the general system of public schools. Liability for the bonds may not be imposed upon the county without the approval of a majority of the qualified voters of the county, Art. VII, sec. 7.

**2. Appeal and Error F a—**

Assignments of error must be supported by exceptions taken during the trial in order to be considered on appeal.

**3. Appeal and Error J g—**

Where the rights of the parties are determined by the answers to certain issues, regardless of the answer to a subsequent issue, matters relating to such subsequent issue need not be considered on appeal.

APPEAL by plaintiffs from *Alley, J.*, at December Term, 1934, of GUILFORD. No error.

Each of the above entitled actions was begun by a summons which was returnable before the judge of the Superior Court of Guilford County, at his chambers, in the city of Greensboro, on 31 August, 1934.

On the facts alleged in the complaint in each action, the plaintiff therein prayed that a writ of *mandamus* be issued by the court, commanding the defendants therein to assume the payment of certain bonds described in the complaint, and to provide for the payment of said bonds, as the same shall become due, by levying taxes on all the property, both real and personal, subject to taxation, in Guilford County, for that purpose.

The defendants in each action filed an answer to the complaint therein, and prayed that the action be dismissed.

On the return of the summons in each action, it was ordered by the judge, on motion of the defendants and without objection by the plaintiff, that the action be transferred to the civil issue docket of the Superior Court of Guilford County, for the trial, at term time, by a jury of the issues of fact raised by the answer therein. Both actions were accordingly transferred to the civil issue docket of said court.

When the actions came on for trial at the December Term, 1934, of the Superior Court of Guilford County, by consent of counsel for the plaintiff and the defendants in each action, it was ordered by the court that the two actions be consolidated for trial. The two actions were accordingly consolidated and tried together.

At the trial, issues arising upon the pleadings were submitted to the jury and answered as follows:

"1. Did the plaintiff, the city of Greensboro, issue and sell $1,125,000 of bonds for the purpose of providing sites, buildings, and equipment for the schools conducted and operated within its district, as alleged in the complaint? Answer: 'Yes.'

"2. Were the proceeds of said bonds used by the plaintiff, the city of Greensboro, for the purpose of providing sites, buildings, and equipment for the schools conducted and operated within its district, as alleged in the complaint? Answer: 'Yes.'

"3. What amount of the bonds and interest so issued and used by the said plaintiff is still outstanding and unpaid? Answer: 'Principal, $869,000; interest, $11,978.'

"4. Did the plaintiff, the Greater Greensboro School District, issue and sell $2,300,000 of bonds for the purpose of providing sites, buildings, and equipment for the schools conducted and operated within its district, as alleged in the complaint? Answer: 'Yes.'

"5. Were the proceeds of said bonds used by said plaintiff for the purpose of providing sites, buildings, and equipment for the schools conducted and operated within its district, as alleged in the complaint? Answer: 'Yes.'

"6. What amount of the bonds and interest so issued and used by said plaintiff is still outstanding and unpaid? Answer: 'Principal, $2,125,-000; interest, ............'

"7. Were the sites, buildings, and equipment acquired, constructed, and used by the plaintiff, the city of Greensboro, reasonably essential and necessary for the conduct and operation of the six months school term contemplated by Article IX, section 3, of the North Carolina Constitution and statutes enacted pursuant thereto, as alleged in the complaint? Answer: 'No.'

"8. Were the sites, buildings, and equipment acquired, constructed, and used by the plaintiff Greater Greensboro School District, reasonably essential and necessary for the conduct and operation of the six months school term contemplated by Article IX, section 3, of the North Carolina Constitution, and statutes enacted pursuant thereto, as alleged in the complaint? Answer: 'No.'

"9. Did the defendants, in the year 1922 or thereafter, assume the payment of the bonds and interest issued and sold by Rural Special Tax Districts in Guilford County, as alleged in the complaint? Answer: 'No.'

"10. Have the defendants failed and refused to assume the payment of the bonds and interest issued and sold by the plaintiffs herein, as alleged in the complaint? Answer: ............

GREENSBORO *v.* GUILFORD COUNTY AND SCHOOL DISTRICT *v.* GUILFORD COUNTY.

"11. Is the plaintiff, the city of Greensboro, estopped by its conduct from asserting its claim and demand that the defendants assume the payment of its bonded indebtedness, as alleged in the complaint? Answer: ............

"12. Did the plaintiff Greater Greensboro School District waive its right to demand that the defendants assume the payment of its bonded indebtedness, as alleged in the complaint? Answer: ............"

The 1st, 2d, 3d, 4th, 5th, and 6th issues were answered by consent. There are no exceptions in the case on appeal with respect to either of these issues.

The court instructed the jury that if they should answer the 7th, 8th, and 9th issues "No," they would not answer the 10th, 11th, or 12th issues. The exceptions in the case on appeal are directed, chiefly, to the trial of the 7th, 8th, and 9th issues.

From judgment denying the prayer of the plaintiffs that a writ of *mandamus* be issued by the court in each action, and dismissing both actions, the plaintiffs appealed to the Supreme Court, assigning numerous errors in the trial, and in the judgment.

*Andrew Joyner, Jr., Hoyle & Hoyle, and Hines & Boren for plaintiffs.*

*B. L. Fentress, Brooks, McLendon & Holderness, Frazier & Frazier, and King & King for defendants.*

CONNOR, J. The bonds aggregating in amount the sum of $2,125,000, which were issued and sold by the city of Greensboro, prior to 1926, when the Greater Greensboro School District was created by the Board of Education of Guilford County, were valid obligations of the city of Greensboro, a municipal corporation of this State. The issuance and sale of said bonds were authorized by statute and were first approved by a majority of the qualified voters of the city of Greensboro. The proceeds of the said bonds were used by the city of Greensboro to provide sites, buildings, and equipment for schools which were established, maintained, and operated by the city of Greensboro, under valid provisions of its charter, in a special charter school district, which was coterminous with the corporate limits of the city of Greensboro, as such corporate limits existed prior to 15 March, 1923, when said corporate limits were extended. These schools were not established, maintained, or operated by the Board of Commissioners or by the Board of Education of Guilford County. The special charter school district, which was coterminous with the corporate limits of the city of Greensboro, was created by the General Assembly of this State, in order that the city of Greensboro might provide better schools in said district than those which the General Assembly at that time provided in obedience to the constitutional man-

date that "the General Assembly at its first session under this Constitution, i.e. (the Constitution of North Carolina adopted in 1868), shall provide by taxation and otherwise for a general and uniform system of public schools, wherein tuition shall be free of charge to all children of the State between the ages of six and twenty-one years." Sec. 2, Art. IX, Const. of N. C. It was manifestly contemplated by the General Assembly, when it created the special charter school district which was coterminous with the corporate limits of the city of Greensboro, and imposed upon the city of Greensboro the duty of establishing, maintaining, and operating schools in said district, that the school facilities in said district would be better in all respects than those provided by the General Assembly for districts in which schools were maintained and operated for only the minimum term required by the Constitution of this State.

The bonds aggregating in amount the sum of $2,300,000, which were issued and sold by the Board of Education of the Greater Greensboro School District, after the said district had been created by the General Assembly a special charter school district, were valid obligations of said district. The issuance and sale of said bonds were authorized by statute and were first approved by a majority of the qualified voters of said district. The proceeds of said bonds were used by the Board of Education of the Greater Greensboro School District to provide sites, buildings, and equipment for schools which were established, maintained, and operated in said district by said Board of Education, under statutory authority. These schools were not established, maintained, or operated, after the issuance and sale of said bonds, by the Board of Commissioners or by the Board of Education of Guilford County. The Greater Greensboro School District, which was first established by the Board of Education of Guilford County, as a school district, in 1926, was created by the General Assembly in 1927, a special charter school district. See chapter 77, Private Laws of North Carolina, 1927. It is provided therein that "the $2,300,000 bonds voted for and in behalf of said district may be issued and sold by the Board of Education of the Greater Greensboro School District, in the name of the district." All the provisions of chapter 77, Private Laws of North Carolina, 1927, show that it was contemplated by the General Assembly, when it created the Greater Greensboro School District a special charter school district, and imposed upon the Board of Education of said district the duty to establish, maintain, and operate schools in said district, that the school facilities of said district would be better in all respects than those which the General Assembly had then provided for districts in the several counties of the State, in which schools were main-

tained and operated for only the minimum term required by the Constitution of the State.

The facts as found by the jury at the trial of these actions that the sites, buildings, and equipment acquired, constructed, and used by the plaintiffs for schools in their respective districts, were not reasonably essential and necessary for the operation in said districts of schools for the minimum term required by constitutional mandate, do not support the suggestion that the jury, in answer to issues submitted by the court, found that the governing authorities of the plaintiffs had acquired sites, constructed buildings, and purchased equipment, with the proceeds of said bonds, which were not reasonably required by the needs of their respective special charter school districts. On the contrary, all the evidence at the trial shows that the sites acquired, the buildings constructed, and the equipment purchased, were all required for the operation of schools in their respective districts, as contemplated and authorized by the General Assembly of this State. These facts are, however, material to a proper determination of the questions involved in these actions, to wit: Whether, under the law of this State, it has become and is now the duty of the defendants to assume the payment of the amounts now due and unpaid on the bonds which were issued and sold by the plaintiffs as obligations of their respective districts, and thereby make said bonds the obligations of Guilford County.

In support of their contention that the questions involved in these actions should be answered in the affirmative, the plaintiffs cite and rely upon the decision of this Court in *City of Hickory v. Catawba County and Newton Graded School District v. Catawba County,* 206 N. C., 165, 173 S. E., 56. These cases were consolidated and tried together in the Superior Court of Catawba County. On defendants' appeal to this Court, the judgment of the Superior Court, on the facts found by said court, commanding the defendants to assume the payment of bonds issued by the plaintiffs, and to levy taxes on all the taxable property in Catawba County for that purpose, was affirmed. In that case it was found as a fact by the Superior Court that the proceeds of the bonds issued and sold by the plaintiffs had been used by them in the construction of buildings which were necessary for the operation in their respective districts of schools for the minimum constitutional term of six months in each and every year. In his opinion in that case, writing for the Court, *Justice Adams* says: "This is not a problem to be solved by the defendants in the exercise of their discretion, or one in the solution of which the courts are shorn of jurisdiction. The exercise of jurisdiction implies the right to hear evidence on the question whether buildings and equipment of certain types are essential to the operation of the schools." The clear implication is that when it is found as a fact, as in

the instant case, that the buildings constructed by the governing authorities of a special charter school district and paid for out of the proceeds of bonds which were obligations of the said district, at the time the said bonds were issued and sold, were not reasonably essential and necessary for the operation in said district of schools for the minimum constitutional term of six months, there is no duty imposed by law upon the county in which said district is located, or upon its Board of Commissioners or Board of Education, which can be enforced by a writ of *mandamus,* to assume the payment of said bonds, where the General Assembly has authorized and directed the county and its governing authorities to take over said buildings and use them in operating public schools as part of the general and uniform system of public schools, required by the Constitution of this State. In such case, liability for the bonds cannot be imposed upon the county without the approval of a majority of the qualified voters of the county. Art. VII, sec. 7, Const. of N. C.

We have considered the numerous contentions of the plaintiffs on this appeal. Many of them are not supported by assignments of error based on exceptions taken during the trial. For this reason they do not require discussion. Contentions which are so supported are without substantial merit. They are not sustained. The answers to the 7th and 8th issues are sufficient to support the judgment, without regard to the answer to the 9th issue. In view of the answers to the 7th and 8th issues, it is immaterial whether or not the defendants have assumed the payment of bonds issued by the rural districts of Guilford County. The proceeds of these bonds were used in the construction of buildings in said districts, which were required for the operation of schools in said district for the constitutional term of six months.

The situation in Guilford County with respect to the bonded indebtedness of said county for schools, as disclosed by the record on this appeal, is the result of a belated recognition by the General Assembly of its constitutional duty to provide a general and uniform system of public schools, which shall be as the Constitution contemplates, a State system. The problems presented by this situation are legislative and not judicial. Relief must be sought from the General Assembly and not from the courts.

We find no error in the trial of these actions. The judgment is affirmed.

No error.